IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DERRICK DAVIS                                                                    PLAINTIFF

v.                                        No. 4:21-cv-763 JM

CITY OF LITTLE ROCK; KENTON BUCKNER,
Individually and in his official capacity; MARK
ISON; ROBERT BELL, individually,
ZACHARY HARDMAN, individually                          DEFENDANTS

<u>ORDER</u>

    This case arises out of the execution of a no-knock warrant by the Little Rock Police

Department's SWAT team at the home of Plaintiff Derrick Davis on September 6, 2017.

Plaintiff filed suit against Kenton Buckner, who was the chief of police at the time of the search,

the City of Little Rock, and three of the City's detectives—Mark Ison, Robert Bell, and Zachary

Hardman. The complaint alleges Fourth Amendment violations in obtaining the no-knock search

warrant and in its execution; a *Monell* claim against the City; a §1983 civil conspiracy claim

between Buckner and the detectives; a single act supervisory claim against Buckner; and

Arkansas state law claims for malicious prosecution, false arrest, and intentional infliction of

emotion distress.

    There are two motions for summary judgment pending, one filed by the detectives and

one filed by the City and Buckner. (ECF. Nos. 27 and 31). In responding to the motions for

summary judgment, Plaintiff specifically withdrew his claims for malicious prosecution and false

arrest. The Court finds that Plaintiff has also abandoned his claim for intentional infliction of

emotional distress by failing to respond to the defendants' motion for summary judgment of this

claim. The defendants are entitled to summary judgment on these state law claims. *Satcher v.*

*Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009).

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.

<u>Facts</u>

Chief Buckner was contacted via email by a citizen on July 27, 2017, about possible drug activity at the Sturbridge Townhomes located on Old Forge Drive in Little Rock, Arkansas. (ECF No. 29-1 at p. 4). The citizen identified a vehicle (tan or gold Jeep Liberty) and Unit 602 as being the residence where the suspected drug trafficking was happening. *Id.* Chief Buckner forwarded the complaint to the Special Investigations Division of the Police Department. *Id.*

Detective Bell received the complaint in the Narcotics Unit. (ECF No. 32-1 at p. 1). On July 28, 2017, Bell contacted the citizen complainant who directed him to the neighbor of Unit 602. *Id.* The neighbor identified the occupants of the apartment as Alexandria Dennis and Ms. Dennis's boyfriend. *Id.* at p. 2. Ms. Dennis and her boyfriend, Plaintiff Derrick Davis, drove a gold Jeep Liberty at the time. (ECF No. 40 at p. 3).

Bell contacted a confidential informant ("CI") about assisting in a controlled buy of narcotics from Davis. (ECF No. 32-1 at p. 2). Bell had worked with the CI before and believed the CI was reliable due to his successful track record in cases that resulted in convictions. *Id.* On September 2, 2017, Bell and Detective Lichti met the CI at a pre-arranged location and thoroughly searched the CI and the CI's vehicle according to LRPD policy to ensure the CI did not have any money, weapons, or contraband such as illegal narcotics. *Id.* at p. 3. Bell gave the

CI $100 to make the buy from Plaintiff. *Id.*

Lichti and Bell followed the CI to Unit 602. (ECF No. 32-1 at p. 3; 32-5 at p. 2). The detectives observed the CI pull in front of the residence, exit his vehicle, and conduct a transaction with an unknown black male who answered the door at the residence. *Id.* The detectives followed the CI back to the predetermined location where the CI gave them a small baggie of cocaine. *Id.* Bell searched the CI and the CI's vehicle again. *Id.* The CI confirmed the exchange of $100 for the cocaine which was sold to him by an unknown black male. *Id.*

Plaintiff denies that he sold cocaine or any narcotic to the CI. He testified in his deposition that he was approached by Kenneth Ray Robinson on two occasions before the search of his home. (ECF No. 34-2 at p. 20-21). On the first occasion, Plaintiff was taking groceries inside his house when Robertson approached him and asked questions about the apartment complex. *Id.* The second occasion occurred a couple of weeks later. *Id.* at 21. Plaintiff and his girlfriend were at home in the evening when Robinson knocked on the door. *Id.* Plaintiff opened the door and Robinson asked, "[H]ey man, do you remember me?" (ECF No. 34-2 at p. 21(77). Plaintiff testified that Robinson asked more questions about the apartment complex stating that he was planning to move there. At the time, Plaintiff did not know Robinson's name. *Id.* He later recognized Robinson by photo as the person he had talked with before his arrest. *Id.*

Following the controlled buy, Bell submitted a search warrant affidavit to Little Rock District Court Judge Hugh Finkelstein that included the facts related to the controlled buy and the assertion that the CI has provided information to the LRPD on at least two occasions that had proven to be correct by independent sources and personal observations. (ECF. No. 32-1 at p. 14-17).  Bell also stated that in his eighteen-year career with the LRPD he has participated in a number of search and seizure warrants, the majority of which involved dynamic entries into

residences "whereby the element of surprise was utilized to prevent the destruction of the evidence sought and to provide a greater degree of safety for both the executing officers and individuals present at the location where the warrant was being executed." *Id.* at 16. Bell also stated that "based on his experience that individuals dealing in illicit narcotics have access to firearms and will readily arm themselves to protect this contraband" and that executing the warrant without the knock-and-announce requirement "would greatly reduce the risk to and increase the safety of the executing officers and occupants . . .and the likelihood of the evidence sought being disposed of or destroyed would also be greatly diminished." *Id.*

On September 5, 2017, Judge Finkelstein issued the search warrant as requested, which excluded the knock-and-announce requirement. (ECF. No. 32-1 at p. 4). "[A]ccording to LRPD policy," Bell met with the SWAT team before the warrant was executed on September 6, 2016. *Id.* The LRPD SWAT unit decided how to execute the warrant, including the manner of entry. *Id.*

Plaintiff testified that on the day the search warrant was executed, he was at home because it was his day off of work. (ECF No. 34-2 at p. 9). He had been cooking and was cleaning up when he heard someone yell, "Little Rock Police." *Id.* There was an explosion at his door. He immediately fell to the ground and laid on his face with his arms out. *Id.* He testified that one officer checked to see if he was ok, and the rest of the officers searched his house. *Id.* After Plaintiff's hands were zip-tied behind his back and he was seated on his couch, "the main detective in the case" asked Plaintiff if he remembered selling him cocaine twice. Plaintiff told him he had the "wrong guy."  *Id.*

During the search, the officers found a jar and a plastic container containing a total of 51.1 grams of marijuana, a digital scale, a 9mm pistol registered to Plaintiff, and a box of ammunition. (ECF No. 32-1 at p. 4). Plaintiff was arrested and charged with possession of

marijuana with purpose to deliver, possession of drug paraphernalia, maintaining a drug premises, and possession of a controlled substance and a firearm. (ECF No. 29-9). The charges were eventually dropped. (ECF No. 38-2 at p. 18).

There is evidence in the record that officers were required to use the SWAT team to execute all search warrants, regardless of whether the officers have any knowledge of an occupant's violent tendencies or gun crime history. (ECF. No. 38-4 at 21). There was a "mandate" from the Office of the Chief of Police that the SWAT team execute all search warrants involving narcotics.  (ECF. No. 38-21).

<u>The Detectives' Motion for Summary Judgment</u>

In Count I of his complaint, Plaintiff alleges Bell and Hardman intentionally misrepresented facts in Bell's search warrant affidavit submitted to Judge Finkelstein in order to obtain a no-knock warrant. He alleges that the actions of Bell and Hardman were "unnecessary, objectively unreasonable and excessive and were, therefore in violation of their [sic] Fourth and Fourteenth Amendment rights." (ECF No. 1 at p. 15). As the detectives point out and Plaintiff concedes, Hardman was not involved in the controlled buy, the affidavit for search warrant, the search, or Plaintiff's arrest. (ECF No. 40 at p. 11-12).[1] Plaintiff has no evidence of Hardman's connection to the case. Therefore, Hardman is dismissed

Bell filed a motion seeking qualified immunity on the claims that they violated Plaintiff's Fourth Amendment rights in obtaining the search warrant and in executing it. He also seeks summary judgment on the civil conspiracy claim. To resolve the issue of qualified immunity, the Court undertakes a two-part inquiry to determine: (1) whether the facts viewed most favorably to the plaintiff make out a violation of a constitutional right, and (2) whether that right was clearly

---

[1] Plaintiff did not respond to the Requests for Admission within the 30 days prescribed by Rule 36(a)(3). Therefore, the facts regarding Hardman are deemed admitted.

established at the time of the challenged conduct. *Masters v. City of Indep., Missouri*, 998 F.3d 827, 835 (8th Cir. 2021); *Watson v. Boyd*, No. 20-1743, 2021 WL 2671317 (8th Cir. June 30, 2021). The Court will undertake this analysis separately for each of the alleged Fourth Amendment violations.

Obtaining the search warrant.

The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002); U.S. CONST. Amend. IV. Plaintiff had a constitutional right to be free from having a warrant issued in the absence of probable cause. That right was clearly established by September of 2017, which leaves the question of whether viewing the evidence in the light most favorable to Plaintiff, the detectives are entitled to summary judgment.

"Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Wallace,* 550 F.3d 729, 732 (8th Cir. 2008) (citations and internal quotation marks omitted). A warrant may be invalidated if a police officer deliberately or recklessly makes false statements to demonstrate probable cause for a warrant. *Franks v. Delaware,* 438 U.S. 154 (1978). To establish a *Franks* violation based on the omission of material facts, a plaintiff must prove: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672, 686

(8th Cir. 2019) (quoting *United States v. Box*, 193 F.3d 1032, 1035 (8th Cir. 1999)). The omitted information must be "*clearly critical* to the finding of probable cause." *Hawkins v. Gage Cnty., Neb.*, 759 F.3d 951, 959 (8th Cir. 2014) (quoting *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir. 1986) (emphasis added). Similarly, to establish a *Franks* violation for including false statements, a plaintiff must prove "1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1311 (8th Cir. 2014) (quoting *United States v. Humphreys,* 982 F.2d 254, 259 n. 2 (8th Cir. 1992)).

Plaintiff alleges the following omissions in Bell's affidavit invalidate the warrant: (1) no mention that the SWAT team would be involved; (2) no mention of the use of explosives to gain entry; and (3) no mention that other options existed besides the no-knock warrant. Plaintiff has not established that these are material omissions that were intended to make, or with reckless disregard made, the search warrant affidavit misleading. As to the decisions made by the SWAT team at the time the warrant was executed, there is no evidence that Bell had control over how the SWAT team executed the warrant. Furthermore, even if these challenged omissions had been included, Bell's statements regarding the controlled buy would still have created a fair probability that evidence of a crime would be found at the residence.

Plaintiff also identifies eight alleged affirmative misrepresentations in the warrant application. Plaintiff's first alleged misrepresentation is that Bell would knock and announce if he felt that he could safely do so upon arrival to the residence when he had no intention of doing so. Second is that Bell would personally assist in the execution of the search and seizure warrant when he knew that the SWAT team would execute the warrant. Third is the statement that "the

majority" of the numerous searches and seizures Bell had participated in involved dynamic entry, when he knew that *every* warrant he had served was a no-knock warrant. These three statements relate to the intended execution of the warrant. The Fourth Amendment does not require that a search warrant specify the manner in which the warrant is to be executed; "[o]n the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant" subject always to the protection against unreasonable searches and seizures. *Dalia v. United States*, 441 U.S. 238, 257, 99 S. Ct. 1682, 1693, 60 L. Ed. 2d 177 (1979). Furthermore, removing these statements would not affect a determination of probable cause.

The fourth alleged misrepresentation argued by Plaintiff challenges "glaring investigation deficits" in the use and monitoring of CIs. Plaintiff alleges that Bell did not conduct a thorough search of the CI before the controlled buy. Plaintiff further alleges that Bell did not record discussions with the CI and failed to get a written statement from him or her in violation of LRPD policy. Plaintiff also makes a vague allegation that there were discrepancies between Bell's statements in the affidavit for search warrant, his contemporaneous controlled buy memos, and his deposition testimony. In the absence of a specific statement in the affidavit alleged to be false, these arguments are not sufficient to establish a *Franks* violation.

For the fifth alleged misrepresentation, Plaintiff challenges Bell's affidavit statement that the element of surprise afforded by a no-knock warrant "greatly enhance[s] the safety to law enforcement officers executing the warrant and the occupants of the residence" and "would greatly reduce the risk to and increase the safety to executing officers and occupants. . . ." (ECF No. 32-1 at p. 16). In support of his argument, Plaintiff relies on a 2003 report written by Sergeant Steven McClanahan, a LRPD police administrator with SWAT training, titled "Tactical

Explosive Breaching: An Introduction on the use of Explosives in Today's Police Department"
(ECF No. 34-7) and a 2014 Warrant Service SWAT Unit Training Memo (ECF No. 34-8).
McClanahan's report addresses the use of explosives—Bell's challenged statements referred to
no-knock warrants, not to the use of explosives. The training memo recites that it is "ALWAYS
safer to bring suspect(s) out to us rather than go into the unknown after them," but Plaintiff has
submitted no evidence that Bell received the SWAT training memo in 2014. These documents do
not establish that Bell's statements about officer safety were knowingly and intentionally false or
made with reckless disregard to the truth.

 The Court cannot distinguish Plaintiff's sixth alleged misrepresentation—which also
challenges Bell's statement that risk of harm would be reduced with a surprise entry—from the
fifth. To the extent Plaintiff attempts in this section of his brief to challenge the statement that a
no-knock warrant would prevent the destruction of evidence, he has failed to establish that this
statement was knowingly false or made with reckless disregard for the truth.

 In his seventh alleged misrepresentation, Plaintiff challenges the assertion that the
warrant affidavit was based on information from a reliable informant. As stated, Plaintiff
testified that the CI in this case was Kenneth Ray Robinson. While it is true that CI Robinson
was terminated as a confidential informant by the LRPD in 2019, Plaintiff has not provided
evidence that Bell misrepresented his belief that Robinson was reliable when he filled out the
affidavit in September of 2017. Plaintiff recites Kenneth Ray Robinson's criminal history and
cites Exhibit 34-16 which is a collection of documents pertaining to Robinson's criminal history.
However, CIs often have criminal histories. A criminal history does not necessarily mean a CI is
unreliable. *See United States v. Gabrio*, 295 F.3d 880, 884 (8th Cir. 2002) ("[T]ipsters often
provide information in the hopes of obtaining leniency with respect to their own situation and

that does not necessarily mean they are unreliable."). Plaintiff has failed to demonstrate that Bell deliberately or recklessly included a false statement or omitted a truthful statement from his warrant affidavit.

In his eighth alleged misrepresentation, Plaintiff challenges Bell's statements in the warrant affidavit that the CI had a high rate of success providing information which led to arrests. In Bell's warrant affidavit, he avowed that that the "reliable confidential informant . . . has provided information to the Little Rock Police Department pertaining to Narcotics trafficking in the Little Rock, Pulaski County area on at least two (2) occasions and this information was proven correct by other independent sources and personal observations" (ECF. No. 32-1 at p. 15). Bell has not proven that this statement was false. "The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." *United States v. Mayweather*, 993 F.3d 1035, 1044 (8th Cir. 2021), *reh'g denied* (May 19, 2021) (quoting *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998)); s*ee also Gabrio*, 295 F.3d at 883 (reliability can be established where the informant has provided reliable information on at least two occasions).

Moreover, "[i]nformation may be sufficiently reliable to support a probable cause finding if it is corroborated by independent evidence." *United States v. Knutson*, 967 F.3d 754, 758 (8th Cir. 2020) (quoting *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013)). In this instance the information learned from the CI was corroborated by the controlled buy witnessed by Bell and Lichti. Plaintiff has not established that Bell's statements in the warrant affidavit regarding the CI in this case were false or that they were made with reckless disregard for the truth.

The Court finds that the warrant affidavit established probable cause that drugs were being sold from Plaintiff's home and that Plaintiff has failed to establish a *Franks* violation.

Even if the CI did not actually buy cocaine from Davis during the controlled buy, Bell had a good faith belief that the buy occurred based upon his surveillance of the alleged buy and his search of the CI both before and after the encounter. Bell is entitled to qualified immunity on this claim.

Executing the no-knock warrant.

Next the Court must determine if Bell and Ison are entitled to qualified immunity on Plaintiff's claim that his Fourth Amendment rights were violated in the execution of the no-knock warrant "despite the lack of a 'high risk situation' and other criteria." (ECF. No. 1 at p. 16). [2]

The detectives argue that there was no Fourth Amendment violation in the execution of the warrant and that they relied in good faith on the warrant's no-knock authorization. "[A] warrant generally confers a 'shield of immunity' to officers acting within the scope of its authority" on the premise that "where a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546-548 (2012)). Officers are not entitled to the benefit of this shield when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 457 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For good reason, "the threshold for establishing this exception is a high one." *Id*.

*Wilson v. Arkansas*, 514 U.S. 927 (1995), established that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment" and noted that circumstances may justify an unannounced entry. *Id*. at 929. In *Richards v.*

---

[2] Plaintiff included Detective Hardman in this claim. However, it is undisputed that Hardman was not involved in the execution of the search warrant.

*Wisconsin,* 520 U.S. 385 (1997), the Court rejected the adoption of a blanket exception to the knock-and-announce requirement in the execution of search warrant arising from a felony drug investigation, holding "[i]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394. The Court described the reasonable suspicion requirement as "not high" and determined that "[t]his standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns . . . and the individual privacy interests affected by no-knock entries." *Id.*

Plaintiff's response to the detectives' motion for summary judgment significantly narrows the scope of the qualified immunity analysis from that argued by the detectives. Plaintiff frames the issue as whether it was clearly established in September 2017 that "the use of flash bang grenades regardless of the circumstances at the target residence" was unconstitutional. (ECF. No. 34 at p. 24). Plaintiff relies on *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672 (8th Cir. 2019), in which the Eighth Circuit found that the SWAT team members were not entitled to qualified immunity because "it was clearly established in 2010 that the use of flash-bang grenades is unreasonable *where officers have no basis to believe they will face the threat of violence* and they unreasonably fail to ascertain whether there are any innocent bystanders in the area it is deployed." *Id.* at 685.

With this bright line established, the next inquiry is whether there was a constitutional violation in this instance. There is no evidence that the detectives were aware of a violent history by the plaintiff, no evidence of the presence of weapons, and no evidence that any surveillance was conducted immediately prior to the execution of the warrant to determine who was present

in the home. However, in the present case, as in *Z.J.*, a SWAT team executed the search warrant, not the detectives. (ECF. No. 27-1 at p. 5; 27-2 at p. 3). The plaintiffs in *Z.J.* named the SWAT team members as defendants as well as the detectives, and the Eighth Circuit held that the SWAT team's conduct in utilizing flash bang grenades under the circumstances was unconstitutional.  Plaintiff did not name the SWAT team members as defendants in this action. And there is no evidence that Bell or Ison were responsible for the decisions made by the SWAT team.[3] As Bell stated in his affidavit, "The LRPD SWAT Unit decided how to execute the warrant, including the manner of entry." (ECF. No. 32-1 at 4).

In analyzing the detectives' claim of qualified immunity in *Z.J.*, the Eighth Circuit held that since § 1983 liability only attaches to individual actions, "the detectives only violated the Fourth Amendment if their own actions were directly responsible for a deprivation of the plaintiff's rights. They are not automatically responsible for all of the actions of the SWAT team officers." *Z.J.*, 931 F.3d at 688. The same analysis applies in this case, and the Court finds that Bell and Ison are entitled to qualified immunity on the claim that they violated Plaintiff's Fourth Amendment rights by the use of flash bang grenades as the evidence does not establish that they were the ones who used the devices or made the decision to use them.

Civil conspiracy.

Because the Court has found that the detectives did not violate Plaintiff's Fourth Amendment rights, the § 1983 claim for civil conspiracy necessarily fails. *See Kingsley v. Lawrence Cnty.*, 964 F.3d 690, 702 (8th Cir. 2020).

---

[3] Plaintiff argues that Bell "absolutely knew explosive devices would be used in the warrant execution he sought" but the exhibit he cites, Exhibit 5 (ECF. No. 34-5), does not support this assertion. (ECF. 34 at p. 11).

The City and Kenton Buckner's Motion for Summary Judgment

The City and Buckner in his official capacity.

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, a city may be liable under § 1983 for a constitutional violation if the violation resulted from an official municipal policy or an unofficial custom or practice. The official capacity claim against Buckner is treated as a claim against the City. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Before municipal liability can attach, "individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (quoting *McCoy v. City of Monticello,* 411 F.3d 920, 922 (8th Cir. 2005). Since the Court has found that the detectives are entitled to summary judgment on Plaintiff's Fourth Amendment claims, there can be no municipal liability stemming from their actions. The City and Buckner in his official capacity are entitled to summary judgment.

Buckner in his individual capacity.

Kenton Buckner was Chief of the Little Rock Police Department at the time of the search of Plaintiff's home in 2017. He had final decision-making authority to create policies within the LRPD. Viewing the facts most favorable to Plaintiff, he had maintained an official policy that required LRPD officers to use the SWAT team to execute all search warrants when narcotics were involved; see April 7, 2014 internal memo referencing "a mandate from the Office of the Chief of Police that the SWAT team execute all search warrants." (ECF 38-21). In his arguments, Plaintiff vigorously challenges the use of no-knock warrants by the LRPD. In doing so, he incorrectly conflates the policy of utilization of the SWAT team with the execution of no-knock warrants. Plaintiff points to no evidence that the use of no-knock warrants was part of the policy established by Buckner. Plaintiff refers to the April 7, 2014 memo as the "no-knock

mandate" but the memo does not mention no-knock warrants. Nor does the cited testimony from non-party Detective Rainey's deposition reference a no-knock mandate as Plaintiff argues. (See ECF No. 38-4 at p. 9).

To determine Buckner's claim for qualified immunity, the Court has to determine whether the policy to use SWAT to execute all narcotics warrants caused a Fourth Amendment violation and whether that violation was clearly established in August of 2017. Assuming no-knock warrants equal using a SWAT team, Plaintiff relies on *Richards v. Wisconsin*, 520 U.S. 385 (1997) to establish the bright line required in the second prong of the analysis. However, nothing in *Richards* forecloses a policy of using the assistance of a SWAT team to execute warrants in narcotics cases.

The Eighth Circuit has acknowledged that "[a]n officer's decision to authorize a SWAT team to execute a warrant can, in some cases, constitute a Fourth Amendment Violation." *Z.J.* 931 F.3d at 688 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1189–92 (10th Cir. 2001). The court stated, "it is clear the decision to send a SWAT team into a residence must be reasonable." *Id.* at 688. However, the Eighth Circuit declined to decide whether the detectives' decision to utilize the SWAT team in *Z.J.* was reasonable. The court called it a "close question" as to whether there had been a constitutional violation under the facts of the case, but concluded that even if there was a violation, the law was not clearly established that "using a SWAT team to execute a [knock-and-announce] search warrant under these circumstances violated the Constitution." *Id.* Likewise, Plaintiff does not point to any law establishing that as of September of 2017 it was unreasonable to utilize a SWAT team in the execution of a no-knock warrant.

Therefore, without deciding if the existence of the policy was a constitutional violation, the Court finds that it was not clearly established that the policy violated the Fourth Amendment in the summer of 2017. Therefore, the Court finds that Buckner is entitled to qualified immunity.

Even if the Court accepted the conflation of no-knock warrants with the use of SWAT teams, the facts in *Richards* were that the investigating officers had applied for no-knock authorization in their warrant, that request was *rejected* by the magistrate, and the officers made a decision in the course of executing the warrant to enter without knocking and announcing their presence. The United States Supreme Court reversed the decision of the Wisconsin Supreme Court that "police officers are *never* required to knock and announce their presence when executing a search warrant in a felony drug investigation." *Id.* at 387. In the present case, Bell applied for and *received* no-knock authorization from the magistrate. Nothing in Buckner's policy mandated the use of no-knock entry in the execution of all warrants involving narcotics *without* having prior no-knock authorization from a magistrate.

<u>Conclusion</u>

The Motion for Summary Judgment filed by Detectives Bell, Hardman, and Ison (ECF No. 31) and the Motion for Summary Judgment filed by Buckner and the City of Little Rock (ECF No. 27) are GRANTED. The motion to exclude Plaintiff's expert (ECF No. 55) is MOOT.

IT IS SO ORDERED this 3rd day of March, 2023.

_____
UNITED STATES DISTRICT JUDGE